PHILADELPHIA TRUST, SAFE DEPOSIT & INS. CO., Assignee, etc., *v.* SEVENTH NATIONAL BANK OF PHILADELPHIA.

(*District Court, W. D. Pennsylvania.* March 9, 1881.)

1. GENERAL AGENCY—POWER OF ATTORNEY—EVIDENCE.

If there is clear and satisfactory evidence from which a general agency may be inferred, a written power of attorney, conferring upon the agent certain specific powers, will not be construed as restricting the authority of the agent to the particular matters therein specified, if the power of attorney, in its terms, is not exclusive nor inconsistent with such general agency.

2. SAME—SAME—INNOCENT PARTY.

The authority of an agent under a written power of attorney may be impliedly expanded by the conduct of the principal in favor of an innocent third party, even where such party, when dealing with the agent, had knowledge of the written power.

3. SAME—CONTRACT—ESTOPPEL.

If such agent, who, with the knowledge and acquiescence of his principal, has habitually exercised authority beyond the scope of the written power of attorney, enters into a contract with a third party, who was induced to believe by the conduct of the principal that he reposed trusts in the agent beyond those specified in the written power, the principal and his voluntary assignee will be estopped from denying the validity of the contract, especially where it enured to the benefit of the principal, and the other contracting party cannot be restored to his former position.

In Equity. *Sur* Exceptions to Master's Report.

*Henry J. McCarthy, Wm. A. Porter,* and *Wm. Scott,* for Trust Company.

*Leonard R. Fletcher, John M. Kennedy,* and *J. H. Baldwin,* for the Bank.

ACHESON, D. J. This is an interpleader between the Philadelphia Trust Safe Deposit & Insurance Company, assignee under a deed of voluntary assignment for the benefit of creditors of Henry G. Morris, as plaintiff, and the Seventh National Bank of Philadelphia, as defendant. The controversy relates to a composition dividend amounting to $8,020.43, payable under a composition agreement in bankruptcy made between James T. Wood, surviving Charles A. Wood, deceased, bankrupts, and their creditors. The divi-

dend is claimed by each of the parties to this issue. This composition dividend is upon three promissory notes, made by the bankrupts, which were held by Henry G. Morris at the date of the adjudication in bankruptcy. Morris, who for a number of years was engaged in business as a machinist, etc., at the Southwark foundry, Philadelphia, failed, and on April 29, 1875, made a voluntary assignment for the benefit of his creditors. The fund in controversy is claimed by the plaintiff in this issue as assignee of Morris, under his voluntary assignment. The defendant in the issue, the Seventh National Bank of Philadelphia, bases its claim to the composition dividend upon a pledge of said notes to the bank made prior to the voluntary assignment. This pledge, it is claimed, was made by Alexander Ervin, the agent of Henry G. Morris, as collateral security for then-existing and future indebtedness of Morris to the bank. Upon the subject of this pledge the master finds as follows: "Shortly after this, in the latter part of February, 1875, Mr. Ervin [Alexander Ervin] was in the bank; D. B. Ervin, the president of the bank, and W. H. Heisler, the cashier, being present. They complained to him of the condition of Henry G. Morris' account, and objected to renewing any of his paper. Ervin then pledged the notes * * * as collateral security for the loan or renewal they were then negotiating, and for future loans and renewals, as well as those that were past. * * * The bank made new loans or renewals after this time, amounting to more than the amount payable on said notes under the composition." This finding of the master is not excepted to, and it seems to be warranted by the evidence.

The real contest concerns the authority of Alexander Ervin to make this pledge. His authority is affirmed by the bank, and denied by the voluntary assignee. Henry S. Morris commenced business at the Southwark foundry on January 1, 1871, and continued it until his voluntary assignment on April 29, 1875. The evidence shows that during all this time Alexander Ervin was the general financial agent of Morris, and possessed his confidence to an extraordinary degree. Ervin from time to time borrowed money for Morris, pledged his

collaterals for such loans, and arranged his discounts.    How
extensive were the powers which he was permitted to exer-
cise,  may be illustrated by reference to the Wood notes.
Together they amounted to the large sum of $41,178.48.
Yet, without any previous direction from Morris, or even con-
sultation with him, Ervin bought these notes for Morris from
a bill-broker.    That the whole financial department of Mor-
ris' extensive business was unreservedly entrusted by him to
Alexander Ervin, is clearly shown.    During his entire busi-
ness career at the Southwark foundry, Morris kept an ac-
count and had large financial transactions with the Seventh
National Bank of Philadelphia, all of which were transacted
through Ervin.    He had complete charge of Morris' bank
account, arranged all his discounts with the bank, and made
loans for Morris from the bank, pledging collateral securities
therefor.    Early in February, 1875, a ten per centum divi-
dend (which preceded the composition) was declared by the
trustees in bankruptcy of James T. and Charles A. Wood.
At that time Ervin brought to the bank the Wood notes, with
a dividend warrant signed by Morris, and got the bank to
discount this dividend, leaving the notes and dividend war-
rant with the bank.    This discount was passed to the credit
of Morris, and the dividend was afterwards collected by the
bank.    It was subsequent to this transaction that the pledge
now in question was made by Ervin to the bank.

Without further recital of the evidence, it is sufficient to
say that it fully justifies the conclusion that Alexander Er-
vin was the general financial agent of Henry G. Morris, and
that it was within the scope of his authority to pledge the
Wood notes to the Seventh National Bank of Philadelphia in the
manner and for the purposes found by the master.    It is true
that there was deposited in the bank a letter of attorney from
Henry G. Morris to Alexander Ervin, dated November 25,
1874, whereby the former conferred upon the latter the fol-
lowing specified powers:    "(1) To draw checks against my
[Morris'] account in the Seventh National Bank of Philadel-
phia; (2) to indorse notes, checks, drafts, or bills of exchange,
which may require my indorsement, for deposit as cash or for

collection in the said Seventh National Bank of Philadelphia; (3) to accept all drafts or bills of exchange which may be drawn upon me, payable at Seventh National Bank of Philadelphia, and to do all lawful acts requisite for effecting these premises." And the plaintiff insists that the authority of Ervin, as agent of Morris in his dealings with the bank, was limited by the terms of this letter of attorney to the particular matters therein specified, and that the pledge of the Wood notes was beyond the scope of the authority thereby conferred.

The master was of opinion that there was "no evidence that the officers of the bank had seen the letter of attorney at the time the notes were pledged;" and therefore he held that the bank was not to be affected thereby. It is strenuously urged that herein the master erred. But, if it be conceded that the bank was chargeable with knowledge of the contents of the letter of attorney, this does not, in my judgment, help the plaintiff's case under all the evidence. The letter of attorney was executed under the following circumstances: An officer of another bank brought to the president of the Seventh National Bank of Philadelphia a draft accepted "Henry G. Morris *per* Alexander Ervin," and inquired if Ervin had authority so to accept, and whether the Seventh National Bank had his power of attorney. The president of the bank then went to Morris and got from him the letter of attorney of November 25, 1874, which was handed to the cashier. Now, the letter of attorney on its face shows that it relates to transactions involving the *signature* of Henry G. Morris, and I do not think it at all inconsistent with a general agency in all financial matters connected with the business of Morris, with which the evidence shows Ervin was in fact clothed both before and after the date of the letter of attorney. That Morris himself did not regard this letter of attorney as limiting the powers of Ervin, as now claimed by the plaintiff, or intend that it should have that effect, appears from what he said in answer to the following question in the course of his examination in this case: "*Question.* Then I understand from your testimony that, during the months of

January, February, March, and April, 1875, you had no personal knowledge of the state of your account with the Seventh National Bank; of what notes, bills, or drafts were discounted for you, nor what collaterals were given, nor how money was raised from the bank or checked out; in short, that you entrusted the entire management of this part of your financial business during these months to Alexander Ervin, without examination and without statement from him. Am I right?" "*Answer. I entrusted such matters to him during that time, as previously, with such additional authority as may have been—as was—given him by the power of attorney.*" * * *

There is other evidence showing that the dealings between Ervin, as agent of Morris, and the bank, after the date of the letter of attorney, were as unrestricted as they were before. These subsequent transactions were in the usual course of Morris' business, and enured to his benefit, and he is chargeable with knowledge of them. It does not, therefore, lie in his mouth, or in that of his voluntary assignee, to say that the powers of Morris were limited by the terms of the letter of attorney. The original transaction with the bank in respect to the Wood notes, viz., the discount of the first dividend, was as much outside the scope of the letter of attorney as was the subsequent pledge of the notes.

A written power of attorney may be expanded by the declarations or acts of the principal. Whar. on Agency, § 225. "By such expansions," says this author, "he may extend his liability beyond the written instrument. Eminently is this the case where the principal, by his acts and statements, leads third parties to believe that he has reposed in the agent trusts beyond those specified in the written power. By such a course the principal is estopped from afterwards disputing his liability to innocent third parties, who were led by such acts or statements on his part to contract with the agent." Id.

It is clear to me that the conduct of Morris was such as to induce the belief on the part of the officers of the bank that he had invested Ervin with authority to make the pledge in question. In that belief they acted, and Morris received the benefit of the contract. To restore the bank to its former

position is now impossible. In this view of the case, therefore, and aside from the question of actual authority, the plaintiff, whose equities are not superior to those of Morris, is estopped from disputing the defendant's title to the fund in controversy.

It is unnecessary to discuss the several exceptions to the master's report. His conclusion is correct. The exceptions are therefore overruled, and a decree will be entered (substantially in the form recommended by him) in favor of the defendant in the issue.